Daniels, J.
This action has been previously before this court on an appeal from a judgment dismissing the plaintiff’s complaint. The material facts affecting the liability of the defendant, have not been essentially changed by the evidence produced upon the second trial, and a re-examinatian of the case has confirmed the conclusion .that the rule previously applied to determine the defendant’s liability was not over stated, in the decision which has already been made and is reported in 24 Hun., 297. Trusts under railway mortgages, as the one created in this case was, are of very great importance, and care prudence, diligence, and fidelity, are required in the discharge of the duties created by them, on the part of the trustee. These duties are not so faithfully observed as to require the least relaxation in the application of the principle upon which that decision was made. They are for the benefit usually of a large number of persons receiving, dealing in, and holding, the bonds secured by the mortgage. And those persons are required as a general rule to depend upon the diligence arid faithfulness of the trustee for the protection of their interests. Where this duty is not observed, but the enforcement of the security is voluntarily handed over to the control and management of interested parties, although they may own the greater part of the bonds secured by the mortgage, the minority have good legal ground for complaint, when their interests in this manner shall be found to have been sacri *123 ficed by those to whom the business may have been committed by the trustee. This should not be permitted to be done, and it is not to be sanctioned or excused even though the agents themselves if they were disinterested would have been proper persons to be selected by the trustee to carry the trust into final effect. Where the trustee fails to discharge the duties assumed by it, in this manner, it fails to observe even that reasonable degree of diligence, mentioned in the mortgage given to the defendant upon the railroad and property of the Milwaukee and Belvit Railroad Company. And for that failure it necessarily, as well as legally, becomes liable to the parties sustaining loss through the abdication of its duties and authority.
But while the facts in this case were such as would well render the defendant legally liable for any loss sustained by the plaintiff as the owner of the bond secured by the mortgage, it was still necessary, before a recovery in the action could be had, that the amount and extent of this loss should be estabhshed by evidence reasonably approximating it, so that it might be fixed and determined by the jury. As the case was before presented, the facts waranted the inference that material loss had been sustained by the plaintiff through the failure of the defendant itself to institute and carry on the foreclosure of the mortgage and secure the sale of the mortgaged property. But, upon the last trial of the action, no evidence was given tending to show that a more favorable disposition of the property could have been made than that which was made under the agreement and management of the interested bondholders having charge of the foreclosure of the mortgage. On the contrary it was made to appear by the witness, William Mullens, whose deposition was read as a part of the plaintiff’s case, that the property of the railroad company had become substantially valueless at the time when the sale took place, and that this had been more fully demonstrated by its subsequent history. About $300,000 had been invested in the grading and preparation of the road bed, but it was finally abandoned, and never has been completed or used as a railroad. This evidence had the direct tendency to establish the fad? that the plaintiff was subjected to no material loss by the manner in which the foreclostire was carried on and the sale was made. For it appeared that no substantial advantage had been secured for the $20,000 which was the bid made for the property, and the company itself had evidently gone into a state or insolvency. The case seems to have been submitted to the jury for them to determine the amount of damages sustained by the plaintiff, upon the fact that this sum of money had been invested in the improvement of the *124 property for the purposes of a railroad. But that, as the other ■ evidence shows, could not be relied upon as any indication that the plaintiff had been subjected to loss by the manner in which the sale had actually taken place. It is true that as against the defendant, after it had put the mortgage out of its hands and control, the strictest evidence of loss should not be required, but some evidence at least should have been given by the plaintiff to establish the fact that the property could have been sold on better terms if the defendant had itself managed the proceedings, and impartially, for the benefit of all bondholders, secured the making of the sale. Proof that the property was of a larger value would have had a tendency to fulfill this legal requirement, but even that evidence was not produced, but it was shown so far as the proof was given in the case that it was of less value than the sum bid for it under the combination of the interested parties having control of the proceedings. As the evidence stood in the case the jury should not have been left at liberty, as they were, to conjecture or speculate upon the question of the plaintiff’s loss, and arbitrarily determine, as that must have been done, the amount they should render as their verdict for the plaintiff in the action. The verdict which they did render is wholly unsupported, and the judgment and order should be reversed, and a new trial directed, with costs to abide the result.
Brady and Ohürohill, JJ., concur.